NO. 12-02-00212-CV



IN THE COURT OF APPEALS



TWELFTH COURT OF APPEALS DISTRICT


 

TYLER, TEXAS


 

BEACON NATIONAL 


INSURANCE COMPANY,
§
 APPEAL FROM THE 115TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


BOB GLAZE AND

JEAN GLAZE,
§
 UPSHUR COUNTY, TEXAS

APPELLEES






 Appellant and Cross-Appellee Beacon National Insurance Company ("Beacon") appeals from
the trial court's judgment awarding Bob and Jean Glaze (the "Glazes") damages in the amount of
$5,875.00 and prejudgment interest in the amount of $4,142.53. In two issues, Beacon asserts the
trial court erred in awarding damages and pre-judgment interest. In one issue, the Glazes as Cross-Appellants contend that the trial court erred in refusing to award them attorney's fees. We affirm.


Factual and Procedural Background


 On February 11, 1993, the Glazes' home of thirty-three years burned to the ground. Beacon
paid the Glazes the policy limits of $70,000.00 for the loss of their structure and $42,000.00 for the
loss of personal property. However, Beacon and the Glazes failed to reach an agreement on the
amount the Glazes were to be paid under the "additional living expense" section of their Texas
Standard Farm and Ranch Owners Policy ("the Policy"), which states:


 ADDITIONAL LIVING EXPENSE - If loss resulting from any of the Perils Insured Against
hereunder renders the property insured under Coverage A - Dwelling wholly or partially untenantable,
the Company agrees to pay, not to exceed 20% of the Limit of Liability applicable to the described
dwelling, as additional insurance the necessary and reasonable increase in living expense to continue
as nearly as practicable the normal standard of living of the insured's household caused by such
untenantability.


 Loss hereunder shall be computed commencing with the date of loss and extend for (but not limited
by the expiration of this policy) the time required, with the exercise of due diligence and dispatch, to
repair or replace such damaged or destroyed property, but it shall not extend beyond the time required
for the Insured's household to become settled in permanent quarters.


 The Glazes contended that under this provision, they were entitled to recover expenses for
a full year of alternative housing at a reasonable amount of $1,000.00 per month and $400.00 per
month for additional food costs during this one-year period. Therefore, the Glazes argued, Beacon
owed them $14,000.00, the full twenty percent of their $70,000.00 dwelling. In December of 1994,
the Glazes made a demand upon Beacon to settle the claim for $12,500.00. Beacon insisted that it
would pay the Glazes no more than $2,400.03 under the Policy's "additional living expense" section. 
Beacon arrived at this figure by stating that the house the Glazes lived in had a rental value of only
$266.66 per month and that they were entitled to only nine months of payments. On February 2,
1995, the Glazes filed suit against Beacon, alleging causes of action for breach of contract and 
breach of the duty of good faith and fair dealing. The Glazes also sought the recovery of attorney's
fees.

 After a bench trial on December 12, 2000, the trial court awarded the Glazes $4,000.00 in
damages under the "additional living expense" section of the Policy for reasonable housing expenses
and $1,875.00 for meals and laundry expenses. In addition, the trial court awarded $4,142.53 in pre-judgment interest on the damage award and for costs of court. The trial court denied the Glazes'
request for attorney's fees. Beacon timely filed this appeal, and the Glazes cross-appealed the trial
court's denial of their attorney's fees.


Contractual Ambiguity


 In its first issue, Beacon contends that the Glazes should not have been allowed to proceed
with their "additional living expense" claim under the Policy because they had not fulfilled a
condition precedent of the contract. "Conditions precedent to an obligation to perform [under a
contract] are those acts or events, which occur subsequently to the making of a contract, that must
occur before there is a right to immediate performance and before there is a breach of contractual
duty." Hohenberg Bros. Co. v. George E. Gibbons & Co., 537 S.W.2d 1, 3 (Tex. 1976). Beacon
contends that the Policy requires the Glazes to provide it with receipts and written documentation
of the Glazes' expenses following the fire. Beacon argues that this requirement comes from the
"Duties After Loss" section of the Policy, which states:



 Duties After Loss



 The following provisions replace Section I, Property Section, "Requirements in Case of
Loss or Occurrence", under the Basic Conditions contained in the policy to which this form
is attached.



 
 In case of a loss to covered property caused by a peril insured against, the insured
must:

 
 give prompt written notice to this company of the facts relating to the
claim.

 notify the police in case of loss by theft.

 a. protect the property from further damage.

 
 



 
 
 
 make reasonable and necessary repairs to protect the property.

 
 
 



 
 
 
 keep an accurate record of repair expenses.

 
 furnish a complete inventory of damaged personal property showing the
quantity, description and amount of loss. Attach all bills, receipts and
related documents which the insured has that justify the figures in the
inventory. 

 as often as this company reasonably requires:
 
 


 

 a. provide this company access to the damaged property.



 provide this company with pertinent records and documents
requested and permit copies to be made.




 submit to examination under oath and sign and swear to it.




 Beacon argues that this section of the Policy creates a condition precedent and that the
condition was not met because the Glazes did not submit any receipts and written documentation of
their expenses. Therefore, Beacon contends, the Glazes cannot prove all of the elements of their
breach of contract claim because all conditions precedent were not performed. See Trevino v.
Allstate Ins. Co., 651 S.W.2d 8,11 (Tex. App.- Dallas 1983, writ ref'd n.r.e.). The Glazes disagree. 
They contend that the "Duties After Loss" section of the Policy is ambiguous and inconsistent
because subsection A(5)(c) of that section indicates that the company may accept oral statements
under oath from insureds as evidence of the amount of "additional living expense" and that "receipts
and written documentation" are not the only methods of proving an amount of a loss to Beacon. 

 Insurance contracts in Texas are subject to the same rules of construction as other contracts. 
Balandran v. Safeco Ins. Co. of America, 972 S.W.2d 738, 741 (Tex. 1998). The primary concern
of a court in construing a written contract is to ascertain the true intent of the parties as expressed
in the instrument. Nat'l Union Fire Ins. v. CBI Industries, Inc., 907 S.W.2d 517, 520 (Tex. 1995). 
If a written contract is so worded that it can be given a definite or certain legal meaning, then it is
not ambiguous and the court will construe the contract as a matter of law. Coker v. Coker, 650
S.W.2d 391, 393 (Tex. 1983). The contract, however, is ambiguous when its meaning is uncertain
and doubtful or it is reasonably susceptible to more than one meaning. Id. Whether a contract is
ambiguous is a question of law for the court to decide by looking at the contract as a whole in light
of the circumstances present at the time the contract was executed. See CBI Industries, Inc., 907
S.W.2d at 520. When a contract contains an ambiguity, the interpretation of the instrument becomes
a fact issue. See Coker, 650 S.W.2d at 394. 

 After reviewing the contract and hearing evidence, the trial court made the following finding
of fact:



 The Court finds that the language of the insurance policy with respect to duties after loss,
taken in its entirety, can be construed to require that records or other documentation must be
kept, generated, or maintained by an insured in order to recover for additional living
expenses; it also can be construed to require the insured to provide records only if they
happen to be in existence and are available, yet also allow recovery for additional living
expenses if supported by evidence, other than written documentation, such as oral testimony. 
Accordingly, the policy is unclear as to whether written documentation is necessary, or if oral
testimony alone is sufficient.



 We agree with the trial court's determination that there could be two reasonable
interpretations of how the amount of the Glazes' "additional living expense" could be reported to
Beacon under the Policy. After a loss to covered property, the Policy states that the only documents
the Glazes must have kept and/or furnished to Beacon are (1) the written notice of the claim, (2)
bills, receipts, and related documents which the insured has, and (3) pertinent records and documents
requested. The Policy also allows for the insurer to obtain the information from an insured through
an "examination under oath," which is signed and sworn to by the insured. Therefore, the Policy
provides the Glazes with two methods of complying with the "Duties After Loss" requirement of 
providing Beacon with the information it deems necessary after such a loss. Furthermore, the Policy
does not condition payment for the "additional living expenses" on the manner in which the Glazes
reported the loss. An insured does have the duty to cooperate with the insurer; however, the policy
provisions at issue in the instant case allow the insured more than one method of fulfilling that duty. 
Where an insurance policy's provisions are ambiguous or inconsistent and are subject to two or more
reasonable interpretations, then that construction which affords coverage will be the one adopted. 
Gonzalez v. Mission American Ins. Co., 795 S.W.2d 734, 737 (Tex. 1990). The trial court's
findings of fact and conclusions of law will be sustained when there is evidence to support them. 
See Burrows v. Miller, 797 S.W.2d 358, 361 (Tex. App.- Tyler 1990, no writ). In the case at hand,
the trial court's finding of fact regarding the ambiguous nature of the "Duties After Loss" provisions
in the Policy is supported by the policy language itself. Accordingly, Beacon's first issue is
overruled. 


Prejudgment Interest


 In its second and final issue, Beacon contends that the trial court erred in awarding pre-judgment interest on the damage award. Specifically, Beacon contends that the Glazes did not reveal
enough of the details of their claim before trial; therefore, the trial court abused its discretion in
awarding prejudgment interest.

 We review a trial court's award of prejudgment interest under an abuse of discretion
standard. J.C. Penney Life Ins. Co. v. Heinrich, 32 S.W.3d 280, 289 (Tex. App.- San Antonio
2000, pet. denied). Prejudgment interest is compensation allowed by law as additional damages for
the lost use of the money due as damages during the lapse of time between the accrual of the claim
and the date of judgment. Johnson & Higgins of Texas v. Kenneco Energy, 962 S.W.2d 507, 528
(Tex. 1998). There are two legal sources of an award of prejudgment interest: 1) general principles
of equity, and 2) an enabling statute. Id. A judgment in a property damage case, or loss of use of
property as here, earns prejudgment interest. See Tex. Fin. Code Ann. § 304.102 (Vernon Supp.
2003). Prejudgment interest can accrue on the amount of a judgment during the period beginning
on the 180th day after the date the defendant receives written notice of a claim. See Tex. Fin. Code
Ann. § 304.104 (Vernon Supp. 2003). 

 In the record before us, we find a two-page letter from the Glazes' attorney to Beacon in
December of 1994 explaining the details of the Glazes' claim for "additional living expenses" due
to the loss of their home in the fire. Further, during the trial, Bob Glaze gave uncontroverted
testimony that the details of their claim were explained to the agent for Beacon in 1993. The purpose
of the statutory prejudgment interest provisions is to encourage parties to seek prompt resolution of
their disputes. See Purcell Const., Inc. v. Welch, 17 S.W.3d 398, 403 (Tex. App. - Houston [1st
Dist.] 2000, no pet.). The trial court was able to review the evidence and the demeanor of the
witnesses as they testified about the presentment of the claims under the Glazes' insurance policy
and who or what may have been slowing down the settlement process. There is nothing in the record
before us to show that the trial court abused its discretion in awarding prejudgment interest on the
Glazes' claim; therefore, Beacon's second and final issue is overruled. 


Attorney's Fees


 In their only cross-issue, the Glazes contend that the trial court erred when it denied them the
recovery of attorney's fees in their suit against Beacon. Allowance of attorney's fees rests within
the sound discretion of the trial court and will not be reversed without an abuse of that discretion. 
Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 881 (Tex. 1990). The test for abuse of
discretion is whether the court acted without reference to any guiding rules and principles. See
Downer v. Aquamarine Operators Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). 

 The Glazes contend that they are entitled to receive attorney's fees pursuant to section
31.001(8) of the Texas Civil Practice and Remedies Code, which allows for the recovery of
reasonable attorney's fees from an individual corporation, in addition to the amount of a valid claim
and cost, if the claim is for an oral or written contract. See Tex. Civ. Prac. & Rem. Code Ann. §
38.001(8) (Vernon 1997). The Glazes argue that they are entitled to attorney's fees because they had
to file suit after making their claim under the Policy. We disagree.

 Part of the requirement of recovering attorney's fees is that the claim must be for "payment
for the just amount owed." See Tex. Civ. Prac. & Rem. Code Ann. § 38.002(3) (Vernon 1997). 
The Glazes made a demand for $12,500.00. The trial court found that a just amount was $5,875.00. 
Beacon had a right under the contract to have liability and the extent of damages determined by the
trier of fact before it was obligated to pay under the Policy. See Sikes v. Zuloaga, 830 S.W.2d 752,
754 (Tex. App.- Austin 1992, no writ). Until a duty to pay under an insurance policy has been
established, there is no just amount owed. Id. Since the "just amount owed" was not determined
until the trial court found that Beacon was liable under the Policy, we cannot say that the trial court
abused its discretion in denying attorney's fees to the Glazes. Therefore, the Glazes' cross-issue is
overruled.


Conclusion

 The Policy's provisions for an insured's "Duties After Loss" are reasonably susceptible to
more than one interpretation; therefore, the trial court did not err in finding that those provisions
were ambiguous. We also hold that the trial court did not abuse its discretion when it awarded the
Glazes pre-judgment interest on the damage award and denied the Glazes their attorney's fees. 

 The judgment of the trial court is affirmed.

 JAMES T. WORTHEN 

 Chief Justice


Opinion delivered March 31, 2003.

Panel consisted of Worthen, C.J. and Griffith, J.




(PUBLISH)